163 Cal.App.2d 319 (1958)
Guardianship of the Person and Estate of SUSAN ANN BLAIR, an Incompetent Person. REBECCA RILEY, as Administratrix, etc., Appellant,
v.
NAOMI BLAIR RUOFF, as Guardian, etc., Respondent.
Civ. No. 22937. 
California Court of Appeals. Second Dist., Div. Two. 
Sept. 2, 1958.
 Pines & Walsh and Roy B. Woolsey for Appellant.
 Leon U. Everhart and Montgomery G. Rice for Respondent.
 FOX, P. J.
 This is an appeal from an order awarding fees and expenses to Naomi Blair Ruoff, as guardian of the person and estate of Susan Ann Blair, now deceased. The order includes fees for the guardian's counsel. The order declared a lien for the amount of the award upon the assets of the estate of Susan Ann Blair which had been turned over to Rebecca Riley, as administratrix of her estate. This appeal is prosecuted by the administratrix. [fn. *]
 At the hearing of the petition of the guardian for fees for herself and her counsel the administratrix took the position that the court was without jurisdiction to make any such award, on the theory that the court's jurisdiction terminated with an order of March 5, 1955, approving the closing account and ordering the discharge of the guardian. In pursuance of that theory, the administratrix, upon the order being made, filed a petition for a writ of certiorari seeking to annul the order. A few days thereafter she filed a notice of appeal which, however, was permitted to remain dormant until after the decision of the Supreme Court in the certiorari proceeding holding that the lower court did have jurisdiction to award fees to the guardian and her attorney. (Riley v. Superior Court, 49 Cal.2d 305 [316 P.2d 956].) The administratrix then perfected the appeal that is now before us for disposition. This record involves the identical proceedings and documents that were reviewed in the certiorari proceeding.
 In order that the sequence of events and legal maneuvers in this estate may be fully understood, we quote the statement *321 of facts set forth in Riley v. Superior Court, supra, pages 307- 309:
 "On August 8, 1950, Naomi Blair Ruoff was appointed and qualified as the guardian of the person and estate of Susan Ann Blair, an incompetent person. Susan Ann Blair died on May 21, 1951, and one Phoebe L. Bonnen was appointed and qualified as administratrix of her estate and letters of administration were issued to her. Phoebe L. Bonnen acted as administratrix of the decedent's estate until November 3, 1952, when she resigned and was succeeded by Rebecca Riley who has ever since acted as such administratrix."
 "On August 31, 1951, Naomi Blair Ruoff filed a first and final account and report of her guardianship, petition for fees and for distribution; on September 27, 1951, the court approved the account and awarded the fees prayed for--$1,750 to the guardian, Naomi Blair Ruoff, and $1,800 to the guardian's attorney."
 "On November 15, 1951, Naomi Blair Ruoff, hereinafter referred to as Guardian, petitioned the superior court to set aside its order approving the account and award of fees so that certain tax matters could be better presented."
 "On November 19, 1951, Rebecca Riley, hereinafter referred to as Administratrix, moved for an order directing the immediate delivery to her of all assets of the deceased's estate."
 "On November 23, 1951, the probate court granted the Guardian's petition to set aside its order of September 27, 1951."
 "On February 25, 1952, the Administratrix filed a second petition for the immediate delivery of all assets."
 "On April 22, 1952, the Guardian's amended supplemental report and account was filed. On May 2, 1952, the Administratrix filed objections and sought to vacate the vacation order of November 23d."
 "On August 5, 1952, the Administratrix filed a third petition for an order directing the Guardian to turn over all funds of the estate. On August 18th, the court directed the Guardian to deliver the sum of $20,000 to the Administratrix for tax purposes."
 "On January 6, 1953, a hearing was had on the amended supplemental report and account and the objections and on January 8th the court ordered all assets delivered to the Administratrix except for certain sums to be retained by the *322 Guardian for miscellaneous closing expenses. The court did not pass on the amended report at this time."
 "On January 16, 1953, the Guardian turned over to the Administratrix the sum of $205,184.59."
 "On June 11, 1953, the court approved, with certain exceptions, the amended report."
 "On July 9, 1953, the Guardian appealed from certain portions of the order. (Estate of Blair, 127 Cal.App.2d 130 [273 P.2d 349].)"
 "On June 24, 1954, the Guardian and Administratrix entered into a stipulation which was considered by the District Court of Appeal in a later opinion (Guardianship of Blair, 139 Cal.App.2d 832, 834 [294 P.2d 521]; hearing denied by this court on May 9, 1956)."
 "On November 1, 1954, the Guardian filed her account of closing expenses, and on December 14, 1954, the Administratrix filed objections."
 "On March 5, 1955, the probate court made its order approving and settling the report of closing expenses, the discharge of the Guardian, the exoneration of the Guardian's bond, and denying the Administratrix' petitions for surcharge and vacation of the order of June 11, 1953."
 "On March 25, 1955, the Guardian filed proposed findings of fact and conclusions of law and a proposed order thereon; the Administratrix filed objections. On April 11, 1955, a hearing was had on the proposals filed by the Guardian and the objections filed by the Administratrix. The objections were overruled and the findings, conclusions, and the order were signed by the trial court. The administratrix moved for a new trial which motion was denied."
 "On April 26, 1955, the Administratrix appealed from the order which was affirmed and a petition for hearing by this court was denied (Guardianship of Blair, 139 Cal.App.2d 832 [294 P.2d 521])."
 "On May 14, 1956, the remittitur issued to and was filed in the trial court."
 "On June 14, 1956, the Guardian petitioned the court for additional fees for herself in the sum of $3,250 and for her attorney (as Guardian) the additional sum of $10,200 for services rendered since her petition of August 31, 1951. On November 27, 1956, the court granted the petition for fees although they were reduced as follows: to the Guardian the sum of $3,250, and to the attorney the sum of $8,200. The court also declared a lien in favor of the Guardian against *323 the estate of the deceased ward." It is from this order of November 27, 1956, that the administratrix appeals.
 The record before us consists of the verified petition of the guardian for fees, the administratrix' objections thereto; a copy of the opinion of the District Court of Appeal in Guardianship of Blair (139 Cal.App.2d 832 [294 P.2d 521]); the order of the trial court awarding fees to the guardian and her attorney; and various notices. There is no reporter's transcript of the oral proceeding below, and the only exhibit is a certified copy of the register of actions.
 We shall assume, without deciding, that the order here in question is appealable. But because of the inadequacy of the record herein we are compelled to affirm it. [1] "In order to obtain a reversal of the judgment it is incumbent upon the appealing party to furnish the reviewing court a record showing affirmatively that the trial court ruled erroneously to his prejudice." (Finnegan v. Finnegan, 64 Cal.App.2d 109, 111 [148 P.2d 37]; to the same effect, see Baldwin v. Baldwin, 120 Cal.App.2d 493, 494 [261 P.2d 16]; Alexander v. McDonald, 86 Cal.App.2d 670, 671 [195 P.2d 24]; Smith v. Wiget, 75 Cal.App.2d 591, 594 [171 P.2d 563].) [2] "In the absence of a contrary showing in the record, all presumptions in favor of the action of the trial court will be indulged by an appellate court." (Alexander v. McDonald, supra, p. 671.) [3] And as stated in Riley v. Dunbar, 55 Cal.App.2d 452, 455 [130 P.2d 771], "if any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." "These rules apply with particular force where discretion is vested in the trial court." (Smith v. Wiget, supra, p. 594.) [4] In the instant matter we are informed by counsel that the entire file in the guardianship proceeding was before the trial judge and that he stated he would examine the same and determine the fees that should be awarded. Thereafter, the trial judge made his award reducing the requested additional attorney's fees $2,000 (from $10,200 to $8,200) and fixing the guardian's additional fee at the amount requested ($3,250). During oral argument counsel for the administratrix conceded that there were certain services rendered by the guardian and her counsel which justified the award of some additional fees. But he contended that the award was excessive and that some of the services were not compensable. It is clear that there is nothing in the limited record before us to sustain his position. Under the principles above stated we must presume that the *324 trial judge awarded additional fees only for such services as were legally compensable; and it does not appear that he abused his discretion in determining the amount thereof.
 The order is affirmed.
 Ashburn, J., and Herndon, J., concurred.
NOTES
[fn. *] *. This is another chapter in the prolonged litigation that has plagued this estate for several years resulting in substantial depletion of its assets through allowances for fees. The earlier chapters, sub nomine, are: Estate of Blair, 126 Cal.App.2d 759 [272 P.2d 866]; id 127 Cal.App.2d 130 [273 P.2d 349]; id 132 Cal.App.2d 305 [282 P.2d 116]; Guardianship of Blair, 139 Cal.App.2d 832 [294 P.2d 521]; Estate of Blair, 42 Cal.2d 728 [269 P.2d 612]; and Riley v. Superior Court, 49 Cal.2d 305 [316 P.2d 956].